Filed 3/30/26  P. v. Fite CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>TANNER WILLIAMDEAN FITE,<br><br>  Defendant and Appellant. | 2d Crim. No. B341788<br>(Super. Ct. No. 23F-08282)<br>(San Luis Obispo County) |

Tanner Williamdean Fite appeals from the judgment after a jury convicted him of four counts of lewd acts on a child (Pen. Code,[1] § 288, subd. (a)).  The court sentenced Fite to five years in state prison.

Fite contends the trial court abused its discretion when it admitted the titles of pornographic videos on his phone, the evidence did not support the aggravating circumstance of violent

---

[1] All undesignated statutory references are to the Penal Code.

conduct indicating a serious danger, and the court abused its discretion when it sentenced him to prison.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

After the death of her mother, the victim, N.D.,[2] lived with her father and other relatives.  Her older sister, N.L., and her sister's boyfriend, Fite, lived together in another house.  N.D. spent time with N.L. and Fite almost every day.  They treated her "like a daughter."

When N.D. was 11 years old, she spent the night at N.L. and Fite's house.  N.L. went to work the next morning and left Fite to watch N.D.  Nobody else was home.

Fite told N.D. to lie on the living room couch on her stomach, to open her legs, and to relax.  Her legs were open "like a V."  Fite sat behind her between her legs.  He was shirtless and wearing only boxer shorts.  Throughout the incident N.D. was wearing leggings and a shirt.

Fite then massaged N.D.'s calves, the top of her thighs, and her buttocks over her clothing with a vibrating "toy" that looked like a red rose.  The vibrator moved up and down and in circles for about 20 minutes.  While rubbing her buttocks with the vibrator he pushed up her buttocks with his hand.  He then put the vibrator on her vagina for about four minutes.  He asked her, "Does it feel good?"

N.D. was shocked and felt she could not tell Fite to stop. She was scared and wanted to go home.  When Fite was done, he said it was their "spa day" and "our little secret."

---

[2] The victim was identified at trial by her first name and the fictitious last name of Doe.  (See § 293.5.)  To protect privacy rights, we refer to her as N.D., and her sister as N.L.  (Cal. Rules of Court, rule 8.90(b)(4), (10) & (11).)

At about 5:00 p.m., Fite texted N.D. to come into his room. He then texted her, "Also we gonna put the lotion soon." An hour later, he texted, "It will be quick[.] [I know you] don't want to but I just dont want [you] to cramp and take care of [your] skin[.] I promise it will feel good and [you] will feel better after a nice massage." He continued, "[T]rust me I felt [your] muscles they tight so we gonna loosen em just one time it will be quick and I promise it will feel good . . . [¶] Like I said one time only and we never have to do it again. [¶] Come in the room."

N.D. did not want to go into the bedroom but eventually did because he repeatedly told her to do so. When she entered his room, he closed the door and blocked it with soda cans. He told her he was just going to massage her legs.

N.D. was scared and didn't think she could leave. She didn't want to do "stuff like that." She told him she "didn't wanna do it." He responded, "Sometimes you have to do some things that you don't like in life."

Fite told N.D. to put down her phone, bend over, lean on a chair, and put her hands on the chair. She stood with her legs spread apart and her hands on the chair. Fite sat on the floor with his face to her "bottom." He used the vibrator on her vagina for a "couple minutes" while touching the back of her thigh with his other hand.

When N.L. returned from work that evening, she asked N.D. about her day. N.D. started crying and said nothing had gone right since their mother had died and she felt a lot of stress at home.

Fite's cellphone contained titles of pornographic videos accessed the day he molested N.D. The titles had been deleted from Fite's phone but were recovered by a forensic examiner. The messages Fite sent to N.D. had also been deleted from his phone,

3

but were retrieved from N.D.'s phone.

Fite testified at trial. He said the red rose was a vibrator and was only used for sexual purposes. He denied having N.D. lie on the couch or massaging or touching her with his hands or a vibrator. He testified they used soda cans every night to keep the door closed, but he did not do it when N.D. was in his room that evening. He said when they were in the bedroom, he might have given N.D. a hug or touched her shoulder, but he did not give her a massage, touch her with the vibrator, or touch her "sexually."

Fite testified he watched pornographic videos that day but said he did that on a regular basis and it was no different that day. He said the text about applying lotion, cramps, massage, and doing things N.D. did not want to do were a "[p]oor choice of words," and he was just encouraging N.D. to apply lotion herself for her dry skin. He said his reference to feeling her muscles referred to feeling her biceps when they were exercising earlier that day.

The jury convicted Fite of four counts of section 288, subdivision (a): lewd conduct in the living room upon the victim's vagina, thigh, and buttocks (counts 1, 2, and 3, respectively), and in the bedroom upon her vagina (count 4).

In a bifurcated proceeding, the trial court found true two circumstances in mitigation (Cal. Rules of Court,[3] rule 4.423(b)(1) & (6)) and three circumstances in aggravation, including that "[t]he defendant has engaged in violent conduct that indicates a serious danger to society" (rule 4.421(b)(1)). The court denied probation and sentenced Fite to the low term of three years for count 1, concurrent low terms of three years for counts 2 and 3, and a consecutive term of two years (one-third of the middle

---

[3] All rule references are to the California Rules of Court.

term) for count 4, for a total prison sentence of five years.

## DISCUSSION

### *Admission of pornography titles*

Fite contends the trial court abused its discretion when it admitted the titles of pornographic videos on his phone. He contends the evidence bolstered the prosecution's case with speculation and violated his rights to due process and a fair trial. We disagree.

A forensic examination of Fite's cellphone found the titles of 25 pornographic videos accessed between 1:50 and 8:22 p.m. the day he molested N.D. Many of the titles included crude sexual language. The titles included references to sexual scenarios with a "Latin Step Daughter," with a "Young Latina," and with "STEP SISTERS." One title referred to a "Latina . . . Seduced By Her . . . Massage Therapist."

Defense counsel stated that nonspecific "evidence of Mr. Fite watching porn while the alleged victim was present at his home is relevant evidence to his mental state and what he was thinking about and whether he was having increased libido at that time. That's I suppose—that's probative without being unfairly prejudicial." But counsel objected to admission of the specific titles because they were adult porn with no child sexual material, the titles were inflammatory and unduly prejudicial, it was not clear what portions of the videos Fite viewed, and the titles were hearsay purporting to describe what was in the videos.

The court made a tentative ruling to disallow some titles, but allow titles with "additional relevance," including one that referred to a "Young Latina" because N.D. also fit that description. The court stated the titles about a "Latin Step Daughter" and "STEP SISTERS" were admissible because they were analogous to Fite's relationship with N.D., whom he treated

5

"like a daughter." The title "Latina . . . Seduced By Her . . . Massage Therapist" was admissible based on evidence Fite massaged N.D. during the charged offenses.

The court invited Fite to include any additional titles that might be favorable to him because they did *not* involve young people or Latinas. Defense counsel elected to include the complete list of 25 titles "so that it doesn't create a false impression." The trial court admitted the complete list, "subject to objections that were already placed on the record."

### 1. Forfeiture

The Attorney General contends that Fite forfeited the issue of admissibility of the titles. We are not persuaded. Counsel conceded that Fite looking at pornography while taking care of N.D. might be relevant, but he objected to admission of the specific titles. When the court made a tentative ruling to admit titles involving young Latinas, familial relationships, and massage, Fite made a strategic choice to include all the titles, presumably to show that Fite was viewing pornography in general and was not contemplating sexual activity with N.D. No forfeiture occurred because the defense objected to the admission of *any* of the titles and sought only to mitigate the effect of the adverse ruling by including titles that weakened the prosecution's theory. (*People v. Venegas* (1998) 18 Cal.4th 47, 94.)

### 2. Evidence of intent

Uncharged conduct is admissible when relevant to "motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident." (Evid. Code, § 1101, subd. (b).) "The least degree of similarity is required to establish relevance on the issue of intent." (*People v. Kipp* (1998) 18 Cal.4th 349, 371.)

"The court in its discretion may exclude evidence if its

6

probative value is substantially outweighed by the probability that its admission will . . . (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) " 'We review the trial court's rulings on relevance and the admission of evidence under Evidence Code sections 352 and 1101 for abuse of discretion.' " (*People v. Parker* (2022) 13 Cal.5th 1, 39 (*Parker*).) We reverse only if " ' " 'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*Ibid.*)

Intent was at issue here. Section 288 prohibits any person from committing lewd acts upon the body of a child under the age of 14 "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." (§ 288, subd. (a).) " 'If [the] intent of the act, *although it may have the outward appearance of innocence,* is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute.' " (*People v. Martinez* (1995) 11 Cal.4th 434, 444.)

Evidence of pornography is properly admitted when its relevance to motive or intent is not outweighed by undue prejudice pursuant to Evidence Code section 352. (*People v. Memro* (1995) 11 Cal.4th 786, 865.) In *Memro*, the defendant was charged with felony murder during commission of a lewd act on a child. Our Supreme Court held that magazines and photographs of children in sexual poses were properly admitted as relevant to his motive and intent to perform lewd acts on the victim. (*Id.* at p. 864.) Although the evidence included material that "would undoubtedly be disturbing to most people," the court found the probative value outweighed the prejudicial effect. (*Id.* at p. 865.)

Similarly, in *Parker*, the probative value of graphic sexual

images to show a sexual interest in the victim was not substantially outweighed by the potential for prejudice even though they "may have been disturbing to jurors." (*Parker*, *supra*, 13 Cal.5th at pp. 40–41.) And in *People v. McCurdy* (2014) 59 Cal.4th 1063 (*McCurdy*), a prosecution for murder and kidnapping to commit a lewd act on a child, the titles of adult-oriented magazines and videotapes were properly admitted as "relevant to demonstrate his interest or preoccupation with 'his sexual passions at the time in question.' " (*Id*. at p. 1100.)

The trial court here stated it sought "an appropriate balance under [Evidence Code section] 352." The court recognized the video titles would be "off-putting to anyone." But the court did not act arbitrarily when it concluded the offensive sexual terms in some of the titles did not "substantially outweigh[]" their probative value. (Evid. Code, § 352.) The court stated the amount of pornography Fite viewed was probative because he was taking care of N.D. during that time. As defense counsel conceded, this was relevant to show that Fite had an "increased libido" during that period. His viewing of pornography involving a young Latina woman, a stepdaughter, stepsisters, and a Latina seduced during a massage were relevant to his intent during his conduct toward N.D.

Fite has not shown that the titles of the videos, which he described as "mainstream" adult pornography, would "uniquely tend[] to evoke an emotional bias against the defendant." (*McCurdy*, *supra*, 59 Cal.4th at p. 1095.) The court properly exercised its discretion by limiting admission to titles with specific relevance to the facts, and by allowing the defense to include additional titles.

Because the court weighed the probative value of the pornography evidence against its prejudicial effect, its admission

8

did not violate Fite's right to due process or a fair trial. (*People v. Byers* (2021) 61 Cal.App.5th 447, 455 [pornography evidence in sexual assault case did not violate due process]; *People v. Holford* (2012) 203 Cal.App.4th 155, 180 [pornography evidence reviewed under Evid. Code § 352 did not deprive defendant of fair trial].) This is not " 'one of those rare and unusual occasions where the admission of evidence has violated federal due process and rendered the defendant's trial fundamentally unfair.' " (*Byers*, at p. 455.)

### 3. Harmless error

Even if the titles of the pornographic videos were improperly admitted, any error would be harmless in light of the overwhelming evidence of Fite's guilt. N.D. described the molests in detail in a forensic interview and in her testimony at trial. Fite placing a vibrator on her vagina unmistakenly showed a sexual intent. He blocked the door with soda cans, positioned her so he could access her vagina, and told her it was a secret. Her testimony was corroborated by Fite's text messages and his consciousness of guilt when he deleted the messages. (*People v. Cooper* (1991) 53 Cal.3d 771, 833.)

In our view, it is not "reasonably probable that a result more favorable to [Fite] would have been reached" if the video titles had not been admitted. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) We also conclude admission of the evidence would be harmless under the federal standard because the overwhelming evidence of Fite's guilt "prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman v. California* (1967) 386 U.S. 18, 24.)

### *Aggravating factor*

Fite contends the record did not support the trial court's finding that he engaged in violent conduct indicating a serious

9

danger to society (rule 4.421(b)(1)).

In a bifurcated proceeding, the trial court found true three circumstances in aggravation: that "[t]he victim was particularly vulnerable" (rule 4.421(a)(3)), "[t]he defendant took advantage of a position of trust or confidence to commit the offense" (rule 4.421(a)(11)), and "[t]he defendant has engaged in violent conduct that indicates a serious danger to society" (rule 4.421(b)(1)). The court also found true two mitigating circumstances: Fite had no prior criminal record (rule 4.423(b)(1)), and he was under the age of 26 (rule 4.423(b)(6)).

Our Legislature has classified violation of subdivisions (a) and (b) of section 288 as a " 'violent felony' " for purposes of recidivist enhancements and the "Three Strikes" law. (§ 667.5, subd. (c)(6).) Two divisions of the Fourth District Court of Appeal have concluded that even when they do not cause physical injury, violations of section 288, subdivision (a) "are 'violent' by virtue of the extreme psychological or emotional harm caused by their commission" for purposes of previous statutory limitations on consecutive terms for "nonviolent" felonies. (*People v. Stephenson* (1984) 160 Cal.App.3d 7, 10; *People v. Hetherington* (1984) 154 Cal.App.3d 1132, 1136–1140.) But for the purpose of commitment of sexually violent predators, the definition of " '[s]exually violent offense' " includes section 288 only if "committed by force, violence, duress, menace, fear of immediate and unlawful bodily injury . . . or threatening to retaliate." (Welf. & Inst. Code, § 6600, subd. (b).) This definition is similar to that of subdivision (b) of section 288, with which Fite was *not* charged.

But the statutory definitions of "violent" felonies do not resolve the issue. "[U]nder California law . . . an aggravating circumstance must 'make[] the offense "distinctively worse than the ordinary." ' " (*Chavez Zepeda v. Superior Court* (2023) 97

10

Cal.App.5th 65, 89, quoting *People v. Black* (2007) 41 Cal.4th 799, 817.) Section 288 applies to conduct encompassing the type of over-the-clothing contact here, as well as rape of a child and other acts of sexual penetration. (See *People v. Benavides* (2005) 35 Cal.4th 69, 97–98.)

We need not determine here whether substantial evidence establishes Fite's conduct was "violent" or "indicates a serious danger to society." (Rule 4.421(b)(1).) As discussed below, the trial court's finding of this factor in aggravation does not require reversal of the sentence.

*Prison sentence*

Fite contends the trial court abused its discretion by insufficiently considering the circumstances in mitigation and his amenability to probation when it imposed a prison sentence. We disagree.

" 'The grant or denial of probation is within the trial court's discretion and the defendant bears a heavy burden when attempting to show an abuse of that discretion.' " (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1311.)

Fite filed a sentencing brief that requested probation. Counsel argued that the crimes occurred on a single day, the touching was over the clothing with no threats, Fite was under 26 years old, he had previously been a victim of abuse, he had no criminal record, and he complied with court orders. Attached to the brief was a report of a clinical psychologist (§ 288.1). It discussed Fite's Static-99R score of Risk Level III, which represented an "average risk" for sexual offense recidivism. The psychologist opined that Fite "does not currently pose an identifiable risk of significant physical harm to the victim." She concluded he was "suitable for a grant of probation and community-based treatment" to reduce the risk of recidivism and

11

to equip him to "make more mature and reasoned decisions."

The court may not grant probation for violation of section 288 without a report from a psychologist or psychiatrist regarding the defendant's mental condition.  (§ 288.1; *People v. Franco* (1986) 181 Cal.App.3d 342, 350.)  But the court was not required to follow the psychologist's recommendation.  (*People v. Downey* (2000) 82 Cal.App.4th 899, 909–910.)

The aggravating factors listed in rule 4.421, including "violent conduct that indicates a serious danger to society" (rule 4.421(b)(1)) relate to the imposition of the upper, middle, or lower term of imprisonment.  (Rule 4.420(b) & (d).)  The trial court here imposed the low term.  However, the court may consider factors in aggravation in determining suitability for probation.  (Rule 4.414(c).)

Fite does not challenge the other aggravating factors, i.e., that "[t]he victim was particularly vulnerable" (rule 4.421(a)(3)), and "[t]he defendant took advantage of a position of trust or confidence to commit the offense" (rule 4.421(a)(11)).

The trial court relied on appropriate factors to determine whether to grant probation.  The court recognized that Fite's lack of criminal record and his age of 22 (rule 4.423(b)(1) & (6)) were "important factors in the Court's eyes."  But the court stated the "wellbeing of the victim" was "one of the primary factors" weighing against probation.  It also doubted whether Fite was remorseful.  We conclude the denial of probation was supported by proper considerations, including the victim's vulnerability (rules 4.414(a)(3), 4.421(a)(3)), the infliction of emotional injury (rule 4.414(a)(4)), the violation of a position of trust (rules 4.414(a)(9), 4.421(a)(11)), and lack of remorse (rule 4.414(b)(7)).

Fite contends the trial court gave too much weight to his lack of apology.  We do not agree.  Lack of remorse is an

appropriate factor in determining whether to grant probation. (Rule 4.414(b)(7).)  The court stated it did not believe Fite's denials and stated he needed to be honest about his behavior with himself and then with the family to help the family heal and make sure it never happened again.

"In reviewing [a determination whether to grant probation,] it is not our function to substitute our judgment for that of the trial court.  Our function is to determine whether the trial court's order granting [or denying] probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances." (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 825.)  The trial court here recognized the mitigating factors and exercised leniency when it selected the low term of imprisonment.  The court did not abuse its discretion.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

13

Jesse John Marino, Judge

Superior Court County of San Luis Obispo

_____

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jonathan J. Kline and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.